## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **MICHELLE GERMANO; DENNIS JACKSON; SHARON JACKSON; JASON DUNAWAY; LISA DUNAWAY, individually, and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TAISHAN GYPSUM CO. LTD f/k/a SHANDONG TAIHE DONGXIN COMPANY, LTD; TOBIN TRADING INC.; HARBOR WALK DEVELOPMENT, LLC, and VENTURE SUPPLY CORPORATION and THE PORTER-BLAINE CORP.,**<br><br>**Defendants** | **Case No. 2:09-cv-00202** |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO VENTURE SUPPLY, INC. AND PORTER-BLAINE CORPORATION'S MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS

**I.    INTRODUCTION**

"Kill the messenger" is a common debate stratagem for parties without any meaningful

substantive support for their argument. Venture Supply, Inc. (Venture) and the Porter-Blaine

Corporation ("PB"), collectively "movants", were, respectively, the supplier and installer of the

defective Chinese drywall tainting plaintiffs' residence.[1] Having no purposeful defense to the

plaintiffs' claims that it is the movants' defective drywall damaging the plaintiffs' homes, Venture

and PB have resorted to distraction and diversion as their latest challenge to plaintiffs' claims

---

[1]*See* Defendants Venture Supply, Inc. and The Porter-Blaine Corp.'s Demurrer and Answer to Plaintiff's Complaint at 16, CL-09-3105 (Va.Cir.Ct. for City of Norfolk, June 1, 2009) ("The present case involves the sale of drywall by Venture to suppliers or the installation of the drywall by Porter-Blaine for a general contractor.").

(and ultimately, the larger class claims) — they now seek to disqualify the plaintiffs' counsel.  In

their zeal to kill these messengers, movants confect a supposedly disqualifying conflict of

interest, *i.e.*, contending that it is inappropriate under the Virginia Rule of Professional Conduct

1.7 for class counsel to simultaneously represent the plaintiffs individually while pursuing

virtually identical claims for other similarly situated home owners in the class actions filed in this

Court and in the Eastern District of North Carolina.[2]  The fulcrum upon which Movants' legal

stratagem pivots and necessarily depends upon is their evidentially unsupported conclusion that a

limited fund is present.

　　　As detailed below, the factual premise for movants' argument is specious.  It is based

upon pure conjecture and rank hearsay.  Not a single affidavit, nor other sort of admissible

evidence is offered by the movants to sustain their speculative argument regarding the existence

of a limited fund.  Further, movants overlook that other defendants, particularly Taishan Gypsum

Co., Ltd.  f/k/a Shandong Taihe Dongxin, Ltd. [hereafter "Taishan"], the Chinese manufacturer

of the movants' drywall, is present as a party in the federal class actions.  Taishan's assets are

neither mentioned, nor accounted for in movants' obtuse definition of the purportedly limited

funds available to satisfy any judgment obtained by the as yet uncertified class represented by

plaintiffs' counsel.  These inconvenient facts eviscerate the fallacy that a limited fund is present

here.

　　　Apart from these factual infirmities, Plaintiffs shall also demonstrate that no ethical

conflict is presented under Virginia law and correlative federal pronouncements.  Indeed,

---

[2]How Virginia's Rules of Professional Conduct are imposed extra-jurisdictionally upon counsel practicing before a United States District Court in North Carolina is never explained.

apparently unbeknownst to the movants, on May 10, 1985, the Virginia State Bar Standing

Committee on Legal ethics issued Legal Ethics Opinion No. 692 [hereafter "LEO No. 692"],

which specifically authorizes the simultaneous representation of individual and class plaintiffs.[3]

Since Virginia does not currently provide for class action practice in state courts of the

Commonwealth, looking to the federal body of law addressing the issue of simultaneous

representation of individual and class plaintiffs, reveals no disqualifying conflicts.

For these reasons and those elaborated upon below, the motion to disqualify should be

denied.[4]

## II.    FACTUAL BACKGROUND

Michelle Germano, Dennis Jackson, Sharon Jackson, Jason Dunaway and Lisa Dunaway

filed this class action complaint on May 1, 2009, against Taishan, Harbor Walk LLC (a builder),

Tobin, Venture and PB.  An Amended Complaint was filed on May 26, 2009.  The Germano

plaintiffs asserted several claims sounding in negligence, breach of contract, warranty, unjust

enrichment, nuisance, and medical monitoring, for the damage to their home, other property and

health.

Counsel for the Germano plaintiffs is Richard J. Serpe, a member of the Virginia Bar.

---

[3]LEO No. 692 is attached hereto as Exhibit "A"  If LEO No. 692 was known to movants and deliberately not disclosed to this tribunal, such practice should not be condoned by this court.

[4] This action is the subject of the June 18, 2009 Conditional Transfer Order ("CTO") issued by the Judicial Panel on MultiDistrict Litigation ("JPML").  Movants objected to the issuance of the CTO and sought to vacate the transfer to the coordinated proceedings taking place in *In re Chinese Drywall*, MDL No. 2047 (E.D.La.) before the Honorable Eldon E. Fallon.  The JPML by Order dated August 14, 2009, is scheduled to hear these objections on September 24, 2009 without oral argument. *See* Hearing Session Order, (JPML Aug. 14, 2009) available at http://www.jpml.uscourts.gov/Hearing_Info/HearingOrder9-24-09.pdf.

His co-counsel identified on the complaints are Arnold Levin, Fred S. Longer, Daniel C. Levin, Levin Fishbein Sedran & Berman; Michael D. Hausfeld, Richard S. Lewis, James J. Pizzirusso, Faris Gareeb, Hausfeld LLP; Robert Gary, Gary Naegele & Theodo, LLC; and Richard W. Stimson. Mr. Levin was recently appointed Plaintiffs' Lead Counsel by the Honorable Eldon E. Fallon in *In re Chinese Drywall Products Liability Litigation*, MDL No. 2047, Pretrial Order No. 8 (E.D.La. July 27, 2009).[5]

On May 8, 2009, the identical plaintiffs' counsel filed a complaint for Tuan and Colleen Nguyen against a different assemblage of defendants for similar claims associated with Chinese drywall, *i.e.* Venture, PB and their homebuilder, Curb Appeal Home Builders, Inc. On June 8, 2009, they filed an Amended Complaint to add Tobin Trading Inc., movant's intermediary in the sale of Chinese drywall from Taishan, as an additional defendant party.

Subsequently, J. Michael Malone, a member of the North Carolina bar, on May 15, 2009, filed a class action complaint in the United States District Court for the Eastern District of North Carolina against yet a different assemblage of defendants for different claims associated with Chinese drywall. *See Hinkley v. Taishan Gypsum Co., Ltd.,* No. 2:09-cv-00202 (E.D.N.C.) [Exhibit B to movant's papers]. Mr. Malone's co-counsel were Richard J. Serpe, Arnold Levin, Fred S. Longer, Daniel C. Levin, Levin Fishbein Sedran & Berman; Michael D. Hausfeld, Richard S. Lewis, James J. Pizzirusso, Faris Gareeb, Hausfeld LLP; Robert Gary, Gary Naegele & Theodo, LLC; and Richard W. Stimson.

Mr. Serpe on August 10, 2009, on behalf of other individual clients that he represents in the Virginia Beach area, filed six complaints against Venture, PB and Tobin and other

---

[5]Available at http://www.laed.uscourts.gov/Drywall/Orders/PTO8.pdf.

defendants. *See Baldwin v. Wellington L.L.C.*, No. CL09 -5135 (Norfolk Circuit Ct.); *Sakony v. Wellington L.L.C.*, No. CL09-5127 (Norfolk Circuit Ct.); *Morgan v. Wellington L.L.C.*, No. CL09-5133 (Norfolk Circuit Ct.); *Galgano v. Wellington L.L.C.*, No. CL09-5137 (Norfolk Circuit Ct.); *Heishober v. Wellington L.L.C.*, No. CL09-5168 (Norfolk Circuit Ct.); and *Ward v. Peak Building Corp.*, No. CL09-5167 (Norfolk Circuit Ct.).[6] Within days of these filings, without even waiting for service of process, Venture and PB filed answers, demurrers and identical motions to disqualify.

Each of these motions to disqualify is dependent upon one salient fact – the existence of a limited fund. To support the pretext of a limited fund, movants make several unsupported contentions: 1) Tobin has only $2 million in insurance coverage; 2) Venture only has insurance from Hanover Insurance Co for liability and umbrella coverage with an aggregate limit of $12 million[7]; 3) PB only has insurance from Hanover Insurance Company for liability and umbrella coverage with an aggregate limit of $12 million; 4) extrapolating from the *ad damnum* clause of the Nguyen's complaint, movants assume that each class members' damages in the *Germano* and *Hinkley* actions are also $2 million per home, over $200 million per case, and "approaching half a billion dollars" in the aggregate. *See* Motion to Disqualify at 3.

Notwithstanding these contentions, the lack of evidentiary support for each is manifest.

First, movants begin with the following hearsay statement: "Counsel will represent to the

---

[6]The complaints in these actions were attached as Exhibit C to the Motion to Disqualify.

[7]After filing their baseless motion, Mr. Serpe called Movants' counsel to advise them of several factual inaccuracies regarding movants insurance coverage. Movants' counsel advised that they had not conducted their own insurance coverage analysis (which raised additional questions regarding the propriety of their motion.). Nonetheless, movants insist that a limited fund still exists.

Court that it has been informed that Tobin has $2 million in insurance coverage under a reservation of rights and that Tobin itself has been out of business for some time and has no assets." *See* Motion to Disqualify at 3. No documents, affided to or otherwise, accompany this statement. Plaintiffs have no way to verify the accuracy of this statement by an out of court declarant without resort to deposing movants' counsel, as Tobin has not yet formally responded to plaintiffs' outstanding discovery that was served along with the summons and amended complaint.

Second and third, despite movants' representations in their initial motion, in response to a request for production of insurance policies in *Nguyen*, PB provided a coverage summary, entitled, "Insurance Policies," attached hereto as Exhibit "B". The summary indicates separate, annual policies for PB beginning in 2005-2006, and continuing until 2008-2009. For each of the four year coverage periods, the summary identifies three separate layers of insurance: 1) general liability; 2) excess liability[8]; and 3) an umbrella policy. Upon inspection of the underlying policies, plaintiffs understand from the declaration pages for policy year 2005-2006 (attached as Exhibit "C") that these policies provide the following coverage:

| Porter Blaine policies 2005-2006 | Aggregate limit |
|---|---|
| General Liability | $2,000,000 |
| Excess Liability | $10,000,000 |
| Umbrella liability | $10,000,000 |
| Total coverage 2005-2006 | $22,000,000 |

---

[8]The summary states, "excess liability policy cancelled July 15, 2009." Movants' recent supplemental responses to discovery reflect an entirely different coverage period that extends until November, 2009.

A review of these policies also clearly establishes that each policy year constitutes its own separate limit of liability. Under "Section III - Limits of Insurance," in the Commercial General Liability policy, that policy at page 10 provides, "The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period to any remaining period of less 12 months, starting with the beginning of the policy period showed in the Declarations..."[9] Accordingly, PB's insurance coverage for 2005 through 2009 appears to be at least as follows:

| Porter Blaine policies 2005-2009 | Aggregate limit |
|---|---|
| 2005-2006 | $22,000,000 |
| 2006-2007 | $22,000,000 |
| 2007-2008 | $22,000,000 |
| Total coverage 2005-2009 | $88,000,000 |

Venture also obtained insurance coverage for these same time periods. On page 3 of its memorandum to disqualify counsel, Venture takes care to separately report insurance coverage than that obtained by PB. While both defendants are listed on the same declaration pages, a reasonable interpretation of the policies, as amended through endorsements, and for considerable additional premiums paid, both defendants are entitled to separate aggregate limits for these policies. If Venture and PB succeed in this policy construction, they would have available at least $176,000,000 in combined coverage.

On September 16, 2009, in *Nguyen*, movants provided a supplemental response to interrogatories including provision of additional umbrella insurance policies, and confirmation that conception of coverage began in 2004, not 2005 as previously indicated (*see* attached correspondence and supplemental discovery response attached as Exhibit "E"). Movants

---

[9]Commercial General Liability Coverage Form is attached hereto as Exhibit"D".

acknowledged in their correspondence that they are still in the process of confirming dates and types of coverage available. With the addition of the 2004-2005 coverage, and the subsequent umbrella policy from July 7, 2009 to present, the total insurance coverage available to these defendants exceeds $230,000,000.00.

Given the inaccurate portrayal of Movants' insurance coverage, plaintiffs are reluctant to accept their representation based upon unsupported hearsay that Tobin has only $2 million in insurance coverage. Even if correct, there is over $230 million of insurance coverage to pay for damages to plaintiffs and the two classes from just these three defendants. Movants never account for any other assets in their possession (properties, leases, vehicles, cash etc.), leaving the Court to once again speculate as to whether the insurance proceeds constitute and define the limits of funds available.[10] Likewise, movants never account for the non-insurance assets of the other defendant in this action Tobin, or the third party defendant, Taishan.

Finally, movants never address the ability of the other defendants in the class actions to contribute to payment of any judgments that may be obtained. Such contributions would further dispel any notion of the existence of a limited fund (assuming such a notion ever was considered). On this point, the movants agree; they have named as third-party defendants, both Taishan and Tobin, for just such a purpose. *See* Defendants Venture Supply, Inc. And the Porter-Blain Corp.'s Third-Party Claim Against Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin, Co., Ltd and Tobin Trading, Inc. (Va. Cir.Ct. for City of Norfolk, June 1, 2009). Their

---

[10] In *Nguyen*, PB and Venture's Response to Plaintiffs' Second Request for Production of Documents Nos. 2-4, Movants objected and deemed irrelevant matters relating to tax returns, financial statements, and any transfer of assets of corporate funds. Having refused to produce this evidence in discovery, Movants should be estopped from adverting to such evidence for purposes of this motion.

purposeful ignorance of Taishan and Tobin (or any of the other defendants) for purposes of the instant motion is disingenuous at best.

Fourth, movants' calculation of the liability exposure generated by the seven individual Virginia state court claims and the *Germano* and *Hinkley* class actions is based on the supposition that at least 100 class members from both class actions have claims equal in value to the Nguyen's $2 million demand. This assertion is purely hypothetical and untethered to any basis in fact. *See* Motion to Disqualify at 2 ("It should be noted that *IF* the seven individual state action homeowner's claims are worth $2 million, each, then the 100-plus plaintiffs in this action must have claims worth at least $200 million, and the 100-plus plaintiffs in the *Hinkley* action must have claims worth at least the same amount.")(emphasis added). Movants have no reason to presume that the home values for the absent class members are the same across the board, or across state lines. If they do, they have failed to provide any evidence of same.

Based on the known, undisputed facts, there is at least $230 million in insurance coverage available from just Venture and PB alone for the seven individual claimants and the two classes represented by plaintiffs' counsel. Since other funds are likely to be available from parties other than the two movants, the movants have failed to establish as a matter of fact any limited fund.[11]

---

[11]As discussed in the next section, the evidentiary burden of establishing a limited fund is on the movants. The Motion to Disqualify is unaccompanied by any evidence. Plaintiffs, on the other hand, have come forward with evidence that controverts movants' assertion of the existence of a limited fund. Having failed to meet their initial burden, it would be unfair and inappropriate, if, in their reply, movants attempt to backfill their oversight by attempting to establish a record so late. If such an improper effort by the movants to cover their lapse occurs, Plaintiffs reserve their right to take discovery (if necessary) and submit a sur-reply to address any newly produced information.

**The Virginia State Bar Inquiry**

Movants represent that they and counsel for Tobin approached the Virginia State Bar for an informal opinion regarding the ethics of plaintiffs' counsel representing both individuals and a class in Virginia only involving related subject matter against the same defendant where the cost of complying with a judgment in favor of the individual or class may render the defendant financially unable to satisfy the claims of the other.[12]  Although no correspondence supporting these communications has ever been produced, Movants assert that the informal response of the State Bar to both inquiries has been the same: "The lawyer would be in a conflict situation and the conflict situation cannot be cured by consent." *See* Motion to Disqualify at 4.

Whether movants advised the State Bar that the class action was only recently filed and that no motion to certify has been filed, and that no order certifying the class has issued, is not disclosed.  Whether the movants advised that their assumptions regarding a limited fund were mistaken and misleading since their reference to the Bar appears to have been made as to only one defendant when numerous defendants and third-party defendants are appearing in the actions and capable of contributing to any judgment are likewise not disclosed.

When confronted with the movants' presentation of their exaggerated and inaccurate inquiry to the Virginia State Bar, plaintiffs demurred. *See* Motion to Disqualify, Exhibit "E." Although conflicts rendering counsel inadequate to represent a class are ordinarily presented in opposition to motions for class certification, *see, e.g.,* Fed.R.Civ.P. 23(a)(4), movants advance their motion now supposedly based upon the advice of the State Bar.

---

[12]To exaggerate their claim of a limited fund, movants take into consideration the claims of the *Hinkley* class. When they sought an ethical opinion from the State Bar, however, movants omitted any mention of same.

As discussed below, there is no actual conflict justifying disqualification.

## III.    ARGUMENT

### A.    THE VIRGINIA STATE BAR HAS FOUND MULTIPLE REPRESENTATION OF BOTH INDIVIDUAL AND CLASS PLAINTIFFS TO BE PERMISSIBLE

Movants assert that Rule 1:7 of the Virginia Rules of Professional Conduct identifies a conflict that makes multiple representation of individual and class plaintiffs irreconcilable. Motion to Disqualify at 6, *citing* Comment 19 [sic., Comment 10]. As *Lazy Oil, supra,* makes clear, such representation is quite common in class actions. Indeed, contrary to movants' assertion that there are no Virginia LEO's directly on point, the Virginia State Bar has ruled on multiple representations in the class context and LEO No. 692 is in accord with *Lazy Oil*.

On May 10, 1985, a Committee Opinion issued on the issue now before the Court.  LEO No. 692 states:

> It is not improper for a firm representing an unincorporated association of condominium owners against individual unit owners for past due assessments to also represent unit owners individually and collectively in a class action suit against a manufacturer for defects in the condominium air conditioning system.

*Id.*  Thus, the State bar has endorsed representation of plaintiffs both "individually and collectively in a class action."  This reasoning should be dispositive.[13]  *See also* District of Columbia Bar Opinion No. 301 (June 20, 2000)("A lawyer representing the plaintiffs in a class

---

[13]Movants may argue that LEO No. 692 addressed the former Code of Professional Responsibility, but they ignored that distinction when addressing other LEOs under the older rules.  Regardless, substantial case law exists to support multiple representation in the fashion undertaken by plaintiffs' counsel.

action lawsuit is not precluded from representing a member of the class who wishes to bring a

tort action involving related subject matter against the same defendant.").[14]

### B.    MOVANTS HAVE A HIGH EVIDENTIARY BURDEN TO JUSTIFY DISQUALIFICATION OF OPPOSING COUNSEL

Motions to disqualify are considered "drastic" measures since they run contrary to the

rights of litigants to freely chose their counsel. *See Gay v. Luihn Food Systems, Inc.*, 54 Va. Cir.

468, 2001 WL 103883, *2 (Va.Cir.Ct. Feb. 7, 2001), *quoting, Shaffer v. Farm Fresh, Inc.*, 966

F.2d 142, 146 (4th Cir. 1992). It has been recognized that certain unscrupulous counsel indulge in

the misuse of "disqualification motions for purely strategic purposes." *Tessier v. Plastic Surgery*

*Specialists, Inc.*, 731 F.Supp. 724, 729 (E.D.Va. 1990). Using motions to disqualify as a

"weapon in the adversarial contest" many such counsel hide under the pretextual "cover of a

dutiful effort to reprove an ethically challenged lawyer," *Gay*, 2001 WL 103833 at *3. Thus,

"only the naive would discount the possibility of such motivations infecting modern litigation."

*Id.*

"Given the potential for abuse, a litigant seeking to disqualify an opponent's lawyer must

hurdle a 'high standard of proof' to be successful." *Id, quoting, Tessier*, 731 F.Supp. at 729.

Recognizing this heightened burden, courts do not make the ruling to disqualify lightly. *Lehner*

*Family Business Trust v. United Leasing Corp.*, 71 Va.Cir. 150, 2006 WL 2022209, *2 (City of

Richmond Cir.Ct. June 20, 2006). Consequently, "imagined scenarios of conflict" can not justify

disqualification. *Gay*, 2001 WL 103883 at *3; *In re Stokes*, 156 B.R. 181, 185 (Bkr.E.D.Va.

---

[14]Opinion No. 301 was attached to the Motion to Disqualify as Exhibit F.

12

1993). Only actual or likely conflicts are grounds for disqualification. *Id.* Hypothesis based on

conjecture will not support granting a motion to disqualify counsel. *Tessier*, 731 F.Supp. at 729.

This enhanced standard of review is especially pertinent to conflicts premised upon

assertions of purported limited funds. To demonstrate an actual conflict under a limited fund

theory, an objecting party must proffer some evidence that a limited fund, in fact, exists. Courts

take the view that mere speculation regarding a defendant's ability to satisfy a judgment at some

point in the future is insufficient to give rise to a conflict. *See Sheftelman v. Jones*, 667 F.Supp.

859, 865 (N.D.Ga. 1987)(declining to find a disabling conflict at class certification stage based

on potential inability to satisfy competing judgments); *Anderson v. Bank of S., N.A.*, 118 F.R.D.

136, 149 (M.D.Fla. 1987)(finding counsel adequate despite multiple representation against same

defendants in four other class actions). *See also Ortiz v. Fibreboard Corporation*, 527 U.S. 815,

842-43 (1999), where the United States Supreme Court observed that "the burden of justification

rests on the proponent of any departure from the traditional norm [of a limited fund]."[15]

The court should further be mindful of practical considerations and approach

disqualification motions on a case-by-case basis so as to avoid "mechanical and didactic"

application of the Rules of Professional Conduct. *Stokes*, 156 B.R. at 185. This is especially the

case when attempting to apply the Rules of Professional Conduct in a class action context. As

Judge Adams noted in his seminal concurrence in *In re Corn Derivatives Antitrust Litigation*,

758 F.2d 157, 163 (3d Cir. 1984), "courts cannot mechanically transpose to class actions the rule

---

[15]The Supreme Court in *Ortiz* rejected a class settlement of asbestos claimants finding that it was improper to "aggregate unliquidated tort claims on a limited fund rationale," *Ortiz*, 527 U.S. at 843. Here, Movants are attempting to transgress this edict by aggregating unliquidated tort claims to confect their limited fund.

13

developed in the traditional lawyer-client setting context." Continuing this line of reasoning,

Judge Adams found:

> Class action litigation frequently promotes and protects the legal
> interests of those whose rights might not be protected at all without
> the class action device. Any approach resembling a per se
> disqualification of an attorney who represents multiple parties in a
> class, or the entire class, when any member disagrees, might well
> undermine the attractiveness and utility of the class action device
> by discouraging multiple representation.

*Id.* at 164. As a result, the concurrence suggested that a "balancing process" should be

undertaken.

Indeed, following the reasoning of Judge Adams, the court in *Lazy Oil Co. v. Witco

Corp.*, 166 F.3d 581 (3d Cir. 1999), permitted class counsel (Levin, Fishbein, Sedran & Berman)

to continue to pursue a class settlement despite the objection of their client, the class

representative plaintiff. Pertinent to the present motion, the court noted that strict application of

the traditional rules on attorney-client relations provides too much "leverage" to those seeking

disqualification for strategic reasons:

> If, by applying the usual rules on attorney-client relations,
> class counsel could easily be disqualified in these cases, not only
> would the objectors enjoy great "leverage," but many fair and
> reasonable settlements would be undermined by the need to find
> substitute counsel after months or even years of fruitful settlement
> negotiations. "Moreover, the conflict rules do not appear to be
> drafted with class action procedures in mind and may be at odds
> with the policies underlying the class action rules." Bruce A.
> Green, *Conflicts of Interest in Litigation: The Judicial Role,* 65
> Fordham L.Rev. 71, 127 (1996).

Id. at 589. The court went on to hold that class counsel were not disqualified from multiple

representation of other individual representative plaintiffs and the class even when their class

representative plaintiff objects to the class settlement, "as long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their former counsel." *Id.* at 590.

Accepting this high standard of proof, it is plain that movants have failed to satisfy their burden of establishing a limited fund to have plaintiffs' counsel disqualified. To the contrary, as established in the factual statement above, there appears to be approximately $230 million in insurance coverage. Further, the availability of other assets of the movants and other defendants are not addressed by the movants. These funds disprove movants' arguments of the existence of a limited fund.

### C.    COURTS HAVE FOUND THERE TO BE NO DISQUALIFYING CONFLICT WHEN REPRESENTING PLAINTIFFS INDIVIDUALLY AND COLLECTIVELY IN A CLASS ACTION UNLESS IT IS PROVEN THAT A LIMITED FUND, IN FACT, EXISTS

As seen from the above discussion, multiple representation of individuals and class plaintiffs is permissible. Some courts, however, have intimated that a conflict could potentially arise between class and individual representation in instances where a limited fund is proven. *See In re Asbestos School Litigation*, 1986 WL 13882 (E.D. Pa. 1986), where the court held:

> Class plaintiffs' counsel assert that class plaintiffs who choose to remain in the class and plaintiffs who opt-out of the class will benefit if counsel is allowed to represent both types of plaintiffs. At this point in this litigation it does not appear that there is a limited fund for payment of damages. In light of this fact I will allow counsel serving on the Executive Committee to represent plaintiffs who have opted out of the class. In the future, however, if it appears that there is a limited fund, a conflict of interest <u>may</u> be found.

*Id.* at *2 (emphasis added). The court's ruling makes clear that even where a limited fund is proven, the finding of an actual disqualifying conflict remains undetermined and subject to further consideration.

Similarly, in *Sheftelman, supra,* the court refused to find counsel inadequate on the basis of a potential conflict resulting from the risk of a limited fund. *Sheftelman,* 667 F. Supp. at 865. The court reasoned that not only were the conflicts illusory because no evidence existed that defendants could not pay, but also "the potential conflicts are very speculative at this time" because the other class had not yet been certified and neither case had yet obtained a favorable judgment. *Id.* Similarly, in *Anderson, supra,* the court concluded that the potential conflict of counsel's representations of four other classes or proposed classes against the same named defendants did not render counsel inadequate. *Anderson,* 118 F.R.D. at 149. The court found that the "conflict is speculative, since plaintiffs must obtain judgments in both cases and defendants must be unable to satisfy the judgments before an actual conflict arises." *Id.*

Elsewhere, state courts have reached the same results. In *Katlin v. Tremoglie,* 1999 WL 1577980 (Phila.C.P. June 29, 1999), for example, the court rejected the conflict argued by movants absent a limited fund being established by the defendants, as follows:

> Defendants argue that a conflict exists between members of the class and patients who have chosen to sue individually in the coordinated management program. The purported conflict arises because Mark Tanner, a partner at class plaintiff's counsel's firm, is on the plaintiff's steering committee for the coordinated program. Defendants contend a conflict exists because """Katlin and individual plaintiffs represented by the law firm could find themselves fighting each other and the class members for their shares of defendants' assets." (Df.'s Greenspring mem. in opp'n at 70.)

16

The court finds, at this time, that no conflict of interest arises from the same law firm representing both class plaintiffs and plaintiffs involved in the coordinated *In re Tremoglie* program. Defendants did not cite any authority for the proposition that an unacceptable conflict of interest arises if a law firm represents both class and individual plaintiffs. For the contrary proposition, however, plaintiff, cited to <u>*In re Asbestos School Litigation*, 1986</u> <u>WL 13882 (E.D. Pa. 1986)</u>. The court in *In re Asbestos School Litigation* permitted counsel for the class to represent both class members and plaintiffs who have opted out of the class. The court permitted counsel to represent both class and opt-out plaintiffs because a limited fund for payment of damages had not been established. *Id.* If it was apparent that a limited fund existed, the court observed that it might find a conflict of interest. *Id.*

Here, we find no conflict of interest exists because individuals in the *In re Tremoglie* program are similar to the opt-out plaintiffs in *In re Asbestos School Litigation*, and no evidence has been presented that a limited fund exists. Although we recognize that up to now there has been no class suit for Tremoglie patients to opt out of, plaintiffs in the *In re Tremoglie* program have effectively opted out of this class suit because they cannot both join this class suit and sue individually in the coordinated program. Plaintiffs who do so have impermissibly split their cause of action. See Part III F. However, we believe that the opt-out status of plaintiffs in the coordinated program could change if, after receiving notice of this class suit, they decide to discontinue their individual suits and opt in to this class action. Therefore, we will-albeit prematurely-refer to plaintiffs in the coordinated program as opt-out plaintiffs. Based on that characterization, we will hew to the principal announced in *In re Asbestos School Litigation*. <u>Because defendants have offered</u> <u>no evidence that a limited fund for damages exists, we find that</u> <u>class counsel's dual representation of the class and individual</u> <u>plaintiffs in the coordinated program does not raise an</u> <u>impermissible conflict of interest.</u>

*Id.* (emphasis added)

As demonstrated above, Movants have mistakenly relied upon the limited fund exception

as the basis for their motion.   Their failure and inability to offer any evidence proving that a

limited fund actually exists warrants the denial of their motion.

17

IV.    **CONCLUSION**

For purely strategic reasons, movants have sought to have plaintiffs' counsel disqualified based on the assertion that a limited fund exists to satisfy the claims of plaintiffs and the classes at issue.  Their motion is unsupported by any evidence.  Even if evidence had been provided, their assertion remains baseless.  Under these circumstances, where the heightened burden of proof rests solely upon the movants, their motion to disqualify counsel should be denied.


                                          Respectfully submitted,

Dated: September 21, 2009                          /S/
                                          _____

                                          Richard Serpe, Esquire
                                          LAW OFFICES OF RICHARD J. SERPE
                                          Crown Center, Suite 310
                                          580 East Main Street
                                          Norfolk, VA 23510-2322
                                          Phone: (757) 233-0009
                                          Fax: (757) 233-0455
                                          *Counsel for Plaintiffs*

                                          Michael D. Hausfeld, Esquire
                                          Richard S. Lewis, Esquire
                                          James J. Pizzirusso, Esquire
                                          Faris Ghareeb, Esquire
                                          HAUSFELD LLP
                                          1700 K Street, N.W.
                                          Suite  650
                                          Washington, DC 20006
                                          Phone: (202) 540-7200
                                          Fax: (202) 540-7201
                                          *Co-counsel for Plaintiffs*

                                          Arnold Levin, Esquire
                                          Fred S. Longer, Esquire
                                          Daniel Levin, Esquire

                                          18

Arnold Levin, Esquire
Fred S. Longer, Esquire
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

Richard W. Stimson, Esquire
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*

Robert Gary, Esquire
GARY, NAEGELE & THEADO, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2009, the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark C. Nanavati, Esquire (VA Bar No. 38709)
Kenneth F. Hardt, Esquire (VA Bar No. 23966)
Sinnott, Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA  23114-4365
(804) 378-7600
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
khardt@snllaw.com
*Counsel for Venture Supply, Inc. and The Porter-Blaine Corp.*

John Franklin, III, Esquire (VA Bar No. 13267)
James E. Brydges, Jr., Esquire (VA Bar No. 4420)
Brian N. Casey, Esquire (VA Bar No. 26710)
Taylor & Walker, P.C.
P.O. Box 3490
Norfolk, VA  23514-3490
(757) 625-7300
(757) 625-1504 (Facsimile)
jfranklin@taylorwalkerlaw.com
jbrydges@taylorwalkerlaw.com
bcasey@taylorwalkerlaw.com
*Counsel for Harbor Walk Development, LLC*

Tobin Trading, Inc.
Theodore J. Brenner, Esquire (VSB No. 17815)
Brenner, Evans & Millman
411 E. Franklin Street, Suite 200
Richmond, Virginia 23219
tbrenner@beylaw.com
*Counsel for Tobin Trading, Inc.*

I also hereby certify that on the 21st day of September, 2009, a true and correct copy of the foregoing pleading was served by first-class mail upon:

Taishan Gypsum Co. Ltd. f/k/a
Shandong Taihe Dongxin Co. Ltd.
Dawenkou, Daiyue District
Tai'an City, Shandohng Province
China 271026

By:

  /s/_____
Richard J. Serpe, Esquire (Va Bar No. 33340)
Law Offices of Richard J. Serpe, P.C.
580 E. Main Street, Suite 310
Norfolk, VA  23510-2322
757-233-0009
757-233-0455 (Facsimile)
rserpe@serpefirm.com
*Counsel for Plaintiffs*